## THOMAS v. HILLHOUSE.

1. Evidence: DATES. The fact that a bill of sale was acknowledged long after its date, is not alone sufficient to raise the presumption that it was antedated.

2. Recording act: POSSESSION. When personal property at the time of the sale thereof was in the possession of a lessee, and remained therein after the sale, it was held, that the vendor did not retain actual possession thereof, within the meaning of § 2201 of the Revision of 1860.

3. Attachment: UNRECORDED CONVEYANCE. No attaching creditor can acquire through his attachment a higher or better right to the property or assets attached than the defendant had when the attachment was levied, unless he can show some fraud or collusion by which his rights have been impaired.

4. Judicial sale WITHOUT NOTICE. When the execution defendants have, in the absence of any fraud, sold their interest in any property before seizure under process, the rights acquired under the sale are paramount to those under the process, notwithstanding it is not shown that the execution plaintiff, or the officer serving the process, had no notice of such sale prior to the seizure of the property.

5. Principal and agent: CONFLICT OF INTEREST. The members of a firm who are vendors of personal property, may act as the agent of the vendee in the management of property; and the existence of the relationship of principal and agent, between one of the vendors and the vendee does not affect the validity of the sale.

*Appeal from Des Moines District Court.*

THURSDAY, OCTOBER 6.

REPLEVIN FOR A SAFE. In May, 1858, Green, Thomas & Co., being the owners of a building and safe therein, leased the same to Lauman, Hedge & Co., for three years. In November, 1858, the Randolph Bank recovered judgment against Green, Thomas & Co. for about four hundred and seventy-seven dollars. In July, 1859, an execution issued on said judgment, and Lauman, Hedge & Co. were garnished thereunder. At the January Term, 1860, said garnishees answered, that the lease had been assigned to Green and Hamill prior to the service of garnishee notice on them, and they owed nothing to the execution defendants thereon. Whereupon they were discharged as to the rent, and the case was continued for further answer as to the safe, and was so continued from term to term till after the expiration of the lease. At the October Term, 1861, the garnishees filed a new answer, stating that they had continued to hold the safe under the garnishee process till October 1st, 1861, when they delivered the same to the sheriff, A. J. Hillhouse, defendant herein, and exhibited his receipt accordingly; and thereupon the court adjudged that the execution plaintiff held a lien upon the safe, from date of the service of garnishee process, and

ordered the sale thereof to satisfy said execution. The sheriff was proceeding to sell under special execution when this suit was brought and the safe replevied. On the 30th day of April, 1861, E. H. Thomas, of the firm of Green, Thomas & Co., acknowledged and filed for record a paper over the signature of the firm, and in the handwriting of Fitz Henry Warren (also a member of said firm), as follows:

"*Burlington, Iowa, August 10th,* 1858.
Messrs. J. W. & G. A. THOMAS,
                    Bought of GREEN, THOMAS & Co.,
1 Bacon's Burglar Proof Safe, in vault of banking
    house, .................................. $500
                    Received payment,
                            GREEN, THOMAS & Co."

Upon this paper, plaintiffs base their claim to the safe. These matters were shown by an agreed statement of facts; and there was a trial by the court, finding for the plaintiffs, and, after a motion for new trial was made and overruled, judgment was entered thereon, from which defendant appeals.

*Crocker & Smyth* for appellant.

*E. H. Thomas* for appellees.

COLE, J.—I. It is clear from the agreed statement of facts, that the execution defendants, Green, Thomas & Co., sold all
1. EVI- their interest in the safe to the plaintiffs before the
DENCE:
dates. service of the garnishee process upon the lessees, Lauman, Hedge & Co., unless the bill of sale was ante-dated. Upon the question as to the date of the bill of sale, there is no evidence whatever, nor is there anything in the agreed statement of facts relating thereto, except the bill of sale itself, and its acknowledgment, which was near three years after its date. The fact that it was acknowledged long after its date, is not alone sufficient to raise the presumption that

it was ante-dated, for it may very properly, as it often does happen, that an instrument is not acknowledged until after its date. But, further than this, it seems to us that a fair construction of the language used in the agreed statement of facts, shows that it was conceded that the paper was truly dated. It is as follows: " The paper under which the plaintiffs claim, was delivered to E. H. Thomas, as agent of plaintiff, who was also a member of the firm of Green, Thomas & Co., but defendants knew nothing of it until the time hereinbefore stated," to wit: the time of its acknowledgment and filing for record. At all events, the presumption of law that the instrument was executed on the day it bears date, together with the agreed statement of facts, as to its delivery, &c., is quite sufficient to repel any presumption of its being ante-dated, arising from its acknowledgment so long after its date.

II. It is conceded, in the agreed statement of facts, that neither the defendant, the plaintiffs in the execution, by 2. RECORD- virtue of which he held the safe, nor their attorING ACT: neys, had any knowledge or notice whatever of possession. neys, had any knowledge or notice whatever of the sale of the safe to the plaintiffs in this action, till the 30th day of April, 1861, the day the bill of sale was acknowledged and filed for record. The question therefore arises, whether the plaintiffs can hold the safe as against the garnishee creditor who is represented by this sheriff, defendant. Our statute is as follows: Revision, " Section 2201 (1193). No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of deeds of the county where the holder of the property resides."

This case, however, is not within either the letter or the

spirit of the statute. The vendor, in this case, did not "retain the actual possession" of the safe; it had been leased to and was in the actual possession of Lauman, Hedge & Co., who were entitled to and did retain such actual possession for the term of three years. This case is not, therefore, within the letter of the law. The object and purpose of the statute was to prevent persons from acquiring or retaining credit, by reason of the possession of personal property, which possession, in the eyes of the law, is evidence of ownership, and to protect purchasers thereof from the fraud which might otherwise be practiced upon them by persons in possession of such property, and thus the ostensible owners of it. This case shows that Green, Thomas & Co. were not in the actual possession of the safe, and therefore could not thereon acquire or retain credit, or make sale and delivery to a purchaser on the faith of such possession, and this case is not therefore within the spirit of the statute.

3. ATTACH-MENT: unrecorded conveyance Again, there can be no question, that as between the vendors, Green, Thomas & Co., and the plaintiffs, the title to the safe passed absolutely and completely at the time of the purchase and payment of the price; and as between them, it was neither necessary to make an actual delivery of the safe, nor to execute a written bill of sale, or have the same recorded. The question then arises, what rights did the garnishee creditors acquire by virtue of the service of the garnishee process ? Mr. Drake, in his excellent treatise on the law of suits by attachment, says: "It is a well-settled principle, that an attaching creditor can acquire through his attachment, no higher or better rights to the property or assets attached, than the defendant had *when the attachment took place*, unless he can show some fraud or collusion by which his rights are impaired. No interest subsequently acquired by the defendant in the attached property will be affected by

Thomas v. Hillhouse.

the attachment. If the property when attached, is subject
to a lien *bona fide* placed upon it by the defendant, that
lien must be respected, and the attachment postponed to
it." Drake on Attachment, § 223. This, it is shown, is
equally true and applicable, where the lien is acquired by
the service of garnishee process, as where the property
itself is directly seized. Whether the garnishee process
arises upon and is executed under a writ of attachment or
a writ of execution, can make no difference in the rights
of the parties under it.

It follows, therefore, that the rights of the defendant in
this case, can be no greater than the rights of the execu-
4. Judicial    tion defendants at the time of the service of the
sale with-
out notice. garnishee process. And we have just seen that
such execution defendants had no rights to the safe, what-
ever, at that time, as against these plaintiffs, and, therefore,
the defendant acquired none. If there had been a sale of
the safe under the process, before any notice of the plaintiffs'
rights thereto, such fact would, doubtless, materially change
the rights of the parties. What we hold, is simply this :
that when, in the absence of any fraud, the execution de-
fendants have sold their interest in the property before
seizure under the process, although notice of such sale is
not brought home to the execution plaintiffs or their officer
until after such seizure, the rights acquired under the sale
are paramount to those acquired under the process. In
thus holding, we follow previous adjudications by this court.
See *Allison et al.* v. *Barrett,* 16 Iowa, 278, and authorities
there cited.

The same principle has also been settled by this court as
applicable to real estate; and, accordingly, it has been held
that a purchaser of real estate, whose deed remained unre-
corded at the date of the rendition of the judgment against
the vendor and levy of the execution thereon, has rights
to such real estate, paramount to those of the judgment

and execution plaintiff. *Norton, Jewett & Busly* v. *Williams*, 9 Iowa, 528; *Bell* v. *Evans et al.*, 10 Iowa, 353. Such being the rule as applicable to real estate, it should *a fortiori* be held applicable to personal property.

III. It is further objected, that E. H. Thomas, one of the firm of Green, Thomas & Co., who acknowledged the bill of sale, also acted as the agent for plaintiffs, and, as such, filed the bill of sale for record, and managed their interest in the property for them. There was no such conflict of interest in such relations, as would preclude him from so acting as their agent. This question was also settled by this court in the case of the *Randolph Bank* v. *Armstrong, Garnishee*, 11 Iowa, 515.

5. PRINCIPAL AND AGENT: conflict, etc.

These plaintiffs were not parties to the judgment upon which the execution issued, under which the garnishee proceedings were had, nor to the garnishee proceedings themselves, and cannot, therefore, be bound or concluded by them. The judgment is affirmed.